UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

READING JOINT APPRENTICE           :
AND ELECTRICAL COMMITTEE;          :
RYAN HELMS; and                    :
INTERNATIONAL BROTHERHOOD          :
OF ELECTRICAL WORKERS, LOCAL       :
UNION NO. 743,                     :
          Plaintiffs,             :
                                  :
          v.                      :    No. 5:16-cv-04306
                                  :
ERIC HIESTER,[1]                   :
          Defendant.              :
_____

**MEMORANDUM OPINION**

**Plaintiffs' Motion for Default Judgment, ECF No. 4 – Denied**

**Joseph F. Leeson, Jr.**                          **November 28, 2016**
**United States District Judge**

## I.   Introduction

Plaintiff Reading Joint Apprentice and Electrical Committee seeks to confirm an arbitration award it secured against Defendant Eric Hiester for breaching the parties' contract. Hiester has not responded to this suit, and the Committee has moved for the entry of a default judgment. Because the Court lacks subject matter jurisdiction to confirm the award, its motion is denied, and this case is dismissed.

## II.  Background[2]

Reading Joint Apprentice and Electrical Committee is a "labor-management group" composed of representatives from Local Union No. 743 of the International Brotherhood of Electrical Workers and from the Reading Division of the Penn-Del-Jersey Chapter of the National Electrical Contractors Association. Mem. Supp. Mot. Default J. 1, ECF No. 4. The Committee was created pursuant to a collective bargaining agreement between Local 743 and the

---

[1]     The docket incorrectly spells the Defendant's name as "Heister," but the caption of the Complaint and the exhibits attached to it confirm that his name is in fact "Hiester."

[2]     Because Hiester is in default, he has admitted the factual allegations pleaded against him. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

1

Contractors Association, and its purpose is to administer a trust fund that provides for a five-year apprentice training program for prospective electricians.[3]

Apprentices who participate in the program have a choice of how to repay the cost of their training. They can either repay the amount in cash, or they can commit to work for a union employer who makes regular contributions to the Committee. For each year of work they perform for a union employer they receive credits toward their outstanding tuition balance, and after five years, their tuition is paid in full.

Eric Hiester participated in the program from 2007 to 2012. Each year, he entered into an "Apprentice Scholarship Loan Agreement" with the Committee, which set forth his obligation to repay the cost of his training. *See* Compl. Exs. 1A-E, ECF No. 1-1. After he completed the program, Hiester worked for a union employer for three years and earned credits toward his tuition balance. But in early 2015, a Local 743 organizer discovered that Hiester had taken a job with a non-union employer. That triggered a default under Hiester's Loan Agreements, which obligated him to immediately repay the remaining balance in cash.

The Committee sent Hiester a letter demanding payment, but Hiester did not comply. After three months had passed, the Committee initiated an arbitration proceeding against him pursuant to an arbitration clause that was included in each of the Loan Agreements. Hiester did not participate in the proceeding, and the arbitrator awarded the Committee $8,060 (representing Hiester's outstanding tuition balance and the costs of the arbitration). *See* Compl. Ex. 4.

The Committee then commenced this action to confirm the arbitration award. As with the arbitration proceeding, Hiester has not answered this suit, and the Committee has moved for the entry of a default judgment against him.

### III. The Court lacks subject matter jurisdiction to confirm the arbitration award.

Section 9 of the Federal Arbitration Act allows a party to an arbitration to apply to a court for an order confirming the arbitration award if the parties contemplated doing so in their arbitration agreement. But the Act does not provide federal subject matter jurisdiction to hear an application to confirm an award. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). That means that if a party wishes to confirm an arbitration award in federal court, the party must first find a basis for federal subject matter jurisdiction.

Importantly, that basis for jurisdiction must arise solely from the application to confirm the arbitration award, not from the underlying dispute that the parties submitted to arbitration. *See Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 255 & n.10 (3d Cir. 2016). That means that a district court may not "look through" the § 9 application to the underlying dispute to find a basis for jurisdiction. *Id.*[4] Instead, jurisdiction must arise from the questions presented

---

[3] Joining the Committee as Plaintiffs are Local 743 and Ryan Helms, one of the individual trustees. For ease of reference, the Court will simply refer to the Committee, which was the signatory to the contract at issue.

[4] To reach that conclusion, *Goldman* had to distinguish the Supreme Court's decision in *Vaden v. Discover Bank*, which held that a court may look to the underlying dispute to find a basis for subject matter jurisdiction to hear a petition to compel arbitration under § 4 of the Federal Arbitration Act. 556 U.S. 49, 62 (2009). Observing that

2

by the § 9 application itself. That sharply limits the district courts' ability to confirm arbitration awards, because "the court's function in confirming . . . an arbitration award is severely limited." *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960). When, as here, the three-month period for the losing party to object to the award has already passed, *see* 9 U.S.C. § 12, "the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 177 (2d Cir. 1984). Absent diversity (which is not present here), that leaves little room for a federal question to arise, because all the court is being called upon to do is enforce the parties' contractual agreement to arbitrate their disputes. *See Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 139 (7th Cir. 1985) (Posner, J.).[5]

In its default judgment motion, the Committee invoked 29 U.S.C. § 185, which gives the district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . or between any such labor organizations." To fit within this grant of jurisdiction, a suit "must be a suit either for violation of a contract between an employer and a labor organization . . . or for violation of a contract between such labor organizations." *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98 (1991). But only Hiester and the Committee signed the Loan Agreements, so § 185 did not appear to apply.[6]

The Court issued an order alerting the Committee to this potential jurisdictional defect and affording it an opportunity to file a brief addressing whether subject matter jurisdiction exists to hear its application.[7] The Committee has done so, and the Court now concludes that it lacks subject matter jurisdiction to confirm the arbitration award.

---

there are both textual and practical differences between § 4, which governs petitions to compel arbitration, and §§ 9 and 10, which govern applications to confirm or modify arbitration awards, *Goldman* concluded that *Vaden's* reasoning was confined to the former. While that settles the matter for this Third Circuit District Court, it is notable that the circuits have recently split over the issue. *Compare Goldman*, 834 F.3d 242, *and Magruder v. Fid. Brokerage Servs. LLC*, 818 F.3d 285 (7th Cir. 2016), *with Doscher v. Sea Port Grp. Sec.*, 832 F.3d 372 (2d Cir. 2016).

[5]   The lack of jurisdiction in this case does not turn on this principle because even if the Court could look to the underlying dispute over Hiester's breach of the repayment provision in the Loan Agreements, that dispute would not supply a basis for subject matter jurisdiction.

[6]   While the Committee is made up of representatives from both Local 743 and the Contractors Association, that does not mean that the Loan Agreements can be characterized as tripartite agreements between Hiester, Local 743, and the Contractors Association. The Committee members "were not, in this context representatives of the employers" or the union. *See Bowers v. Moreno*, 520 F.2d 843, 845 (1st Cir. 1975). Rather, they were acting as trustees and fiduciaries of the trust fund that the Committee administers. *See* Compl. ¶ 5;

[7]   The Committee suggests that Hiester has admitted that subject matter jurisdiction exists because a defendant in default admits to all of the factual allegations in the complaint, which, in the Committee's view, includes its jurisdictional allegation. *See* Compl. ¶ 1 ("This Court has jurisdiction over this matter under 9 U.S.C. § 2, 9 U.S.C. § 9, 29 U.S.C. § 185, and 29 U.S.C. § 1132."). There are two problems with this line of reasoning. The first is that the Committee's jurisdictional allegation is a legal conclusion, not a factual allegation, and "a party in default does not admit to mere conclusions of law." *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994) (quoting 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2688, at 447-48 (1983)); *see DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir. 2005). The second and more fundamental problem is that "no action of the parties can confer subject-matter jurisdiction upon a federal court," *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), which means that a defendant's default does not relieve a district court of its "affirmative

**A.      29 U.S.C. § 185 does not provide a basis for subject matter jurisdiction.**

The grant of jurisdiction in 29 U.S.C. § 185 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). This is so because the "interests in interpretive uniformity and predictability" in the area of labor relations call for "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement" to be resolved "by reference to uniform federal law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

Confirmation of the Committee's arbitration award does not implicate any rights created by the Local 743–Contractors Association collective bargaining agreement, or require any analysis of it. While § 185 grants the district courts jurisdiction to enforce arbitration awards rendered pursuant to dispute resolution procedures embodied in collective bargaining agreements, *Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963) (per curiam), Hiester's obligation to arbitrate any disputes over his tuition loans (and his underlying obligation to repay those loans) comes solely from the Loan Agreements, to which only he and the Committee are signatories.

The Committee stresses that the Loan Agreements "draw their very existence" from the collective bargaining agreement and that the Committee itself was established by, and is administered pursuant to, that collective bargaining agreement.[8] While that may be true in the sense that neither the Committee nor the Loan Agreements would exist but for the collective bargaining agreement, that does not mean that Hiester's obligation to abide by the outcome of the arbitration (or the Committee's underlying right to repayment) is "founded directly on rights created by [the] collective bargaining agreement[]" or is "substantially dependent on analysis of [the] collective-bargaining agreement." *See Caterpillar*, 482 U.S. at 394.

Particularly important is the fact that the Committee's complaint contains no reference to the collective bargaining agreement. Nor has the Committee furnished a copy of the agreement or cited to a single provision that might be relevant to whether the arbitration award should be confirmed. At most, the Committee suggests that the collective bargaining agreement might need to be consulted to "determine the existence of the parties, their obligations and rights, and proper administration of the [Committee],"[9] but none of that is necessary given that the time for Hiester to challenge the validity of the arbitration award has lapsed. Even if it were necessary to consult a portion of the collective bargaining agreement, "the bare fact that a collective-bargaining

---

duty to look into its jurisdiction . . . over the subject matter." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *see Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015) ("[W]hen a default judgment is requested, a court is required to make a threshold determination regarding any jurisdictional defects."); *Dambach v. United States*, 211 F. App'x 105, 109 (3d Cir. 2006) (per curiam) (observing that a district court is "obligated to consider" its subject matter jurisdiction "*sua sponte* before entering default judgment").

[8]      Pls.' Br. 6, ECF No. 6.
[9]      Pls.' Br. 7.

4

agreement will be consulted in the course of state-law litigation"—when the meaning of its terms is not in dispute—does not bring a claim within the scope of § 185. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 413 n.12 (1988)).

### B. 29 U.S.C. § 1132 does not provide a basis for subject matter jurisdiction.

The Committee also proposes that subject matter jurisdiction exists under the Employee Retirement Income Security Act of 1974 (ERISA) because the apprentice training program is an "employee welfare benefit plan." *See* 29 U.S.C. § 1002(1)(A); *Milwaukee Area Joint Apprenticeship Training Comm. for Elec. Indus. v. Howell*, 67 F.3d 1333, 1337 (7th Cir. 1995) ("Joint apprenticeship and training funds are 'welfare benefit plans' under ERISA . . . ."). Through its civil enforcement provision, ERISA creates a number of specific causes of action and grants the district courts jurisdiction to hear them, *see* 29 U.S.C. § 1132, and the Committee contends that this provision provides the jurisdiction necessary to confirm the arbitration award.

The Committee, however, does not appear to have raised any claim under § 1132 against Hiester during the arbitration, *see* Compl. Ex. 2, ECF No. 1-1, and in its complaint here, the Committee makes only passing reference to § 1132 without naming any specific one of § 1132's various causes of action.[10]

It is important to note, however, that owing to the "extraordinary pre-emptive power" of ERISA's civil enforcement scheme, even a complaint that does not plead a claim under § 1132 may nonetheless be federal in nature if it contains a claim that falls within the scope of one of § 1132's causes of action. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). Referred to as the doctrine of complete preemption, certain federal causes of action, like those in § 1132, are intended to so completely preempt state law that any claim that comes within their scope, "even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 207-08 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). This means that if a complaint contains a claim that "could [have] been brought . . . under ERISA" (even if it was not), the claim is actually federal in nature and jurisdiction exists under § 1132 to hear it. *See id.* at 210.

The Committee's application to confirm its arbitration award, however, does not fall within the scope of any of § 1132's causes of action. Coming the closest is § 1132(a)(3), which allows a plan fiduciary (like the Committee) to bring an action "to enjoin any act or practice which violates . . . the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce . . . the terms of the plan." But as the language of that provision makes clear, it permits only claims for equitable relief, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 218 (2002), which the Committee's application to confirm the

---

[10] *See* Compl. ¶ 1 ("This Court has jurisdiction over this matter under 9 U.S.C. § 2, 9 U.S.C. § 9, 29 U.S.C. § 185, and 29 U.S.C. § 1132."); *id.* ¶ 27 ("The [arbitration] award should be enforced against Defendant under 9 U.S.C. § 2, 9 U.S.C. § 9, 29 U.S.C. §1132, 29 U.S.C. § 185, and other applicable law.").

5

arbitration award is not. Conceptually, by asking this Court to confirm the arbitration award, the Committee is seeking a money judgment against Hiester for breaching his agreement to settle disputes with the Committee through arbitration. "A claim for money due and owing under a contract," however, "is 'quintessentially an action at law.'" *Id.* at 210 (quoting *Wal-Mart Stores, Inc. v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000)). The same would be true even if the Court were to look to the Committee's underlying claim against Hiester for breaching the repayment clause in the Loan Agreements. That claim seeks to "impose general personal liability on [Hiester] for the costs it advanced under the scholarship loan agreement," which is nothing more than "an action at law to remedy [his] breach of a legal obligation." *See Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234, 1238 (9th Cir. 2003) (concluding that a joint apprentice training committee's breach of contract claim against an apprentice who failed to repay his tuition did not fall within § 1132(a)(3)); *Sheet Metal Local #24 Anderson, Tr. v. Newman*, 35 F. App'x 204, 207 (6th Cir. 2002) (same); *Joint Apprenticeship & Training Comm. of Local Union No. 36 v. Weddle*, No. 4:16 CV 1371, 2016 WL 6441601, at *10 (E.D. Mo. Nov. 1, 2016) (relying on *Foster* and *Newman* for the same).

      The Committee expresses concern that if § 1132 is not construed in such a way to embrace its application to confirm the award, it may be left without a remedy, because ERISA may preempt its attempt to enforce the Loan Agreements under state law.[11] It is true that ERISA contains "expansive pre-emption provisions," *Davila*, 542 U.S. at 200, which sweep away "'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983) (quoting 29 U.S.C. § 1144(a)). It is also true that at least one court, on these facts, concluded that ERISA preempted an apprentice training committee's state law breach of contract claim against a union apprentice, *see Foster*, 332 F.3d at 1236 (observing that, prior to the training committee's attempt to seek relief in federal court under § 1132, a state court had dismissed the committee's state law claim on preemption grounds), though other courts have disagreed, *see, e.g.*, *Weddle*, 2016 WL 6441601, at *9 (concluding that a training committee's claim did not "relate to" an employee benefit plan within the meaning of § 1144);[12] *Urista v. Ohman*, No. 19HA-CV-12-321, 2012 Minn. Dist. LEXIS 233, at *26 (Minn. Dist. Ct. Nov. 19, 2012) (concluding that Congress did not intend for ERISA to preempt a training committee's common law breach of contract claim).

      But § 1132 embodies a "carefully crafted and detailed enforcement scheme," and the Committee's concern that it may be left with no remedy at all does not justify stretching § 1132

---

[11] By contrast to the doctrine of complete preemption, which transforms state law claims that fall within the scope of certain federal causes of action into federal claims, this more common type of preemption, known as conflict preemption, simply eliminates certain state laws and claims and can be raised as a defense to a state law claim. *See Sender v. Franklin Res., Inc.*, No. C-11-3828, 2011 WL 5006460, at *2 (N.D. Cal. Oct. 20, 2011) (explaining the difference between these two types of ERISA preemption).

[12] *Weddle* blended together the concepts of complete preemption and conflict preemption, but the court appears to have been of the view that ERISA's conflict preemption provisions in § 1144 would not bar a state law breach of contract claim under these circumstances. *See* 2016 WL 6441601, at *8-10.

beyond its plain language. *See Great-West*, 534 U.S. at 220-21 (rejecting an entreaty "to interpret § 502(a)(3) so as to prevent [the plaintiffs] 'from being deprived of any remedy'"); *see also Foster*, 332 F.3d at 1238 (rejecting an apprentice training committee's attempt to recover unpaid tuition under § 1132 despite the fact that a state court had already concluded that ERISA preempted the committee's ability to seek relief under state law).

Whether ERISA may ultimately preempt the Committee's attempt to enforce its arbitration award in state court is an issue for that court to address, because with no subject matter jurisdiction over the Committee's complaint, this Court is without the authority to entertain that question.[13] *See Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995) (observing that when a claim is not completely preempted by ERISA but may be preempted by ERISA's conflict preemption provisions, a district court lacks the power to resolve that dispute).

**IV.     Conclusion**

Neither 29 U.S.C. § 185 nor 29 U.S.C. § 1132 supply the subject matter jurisdiction necessary to confirm the Committee's arbitration award.[14] Accordingly, its request for the entry of a default judgment against Hiester is denied, and this case is dismissed for lack of jurisdiction. An appropriate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[13]     Even if the Committee's passing reference to § 1132 in its complaint could be construed to state a claim under that section such that this Court would have jurisdiction to decide the claim on its merits, the claim would fail because none of the causes of action under § 1132 apply under these circumstances. And if that were the case, the Court would decline to exercise supplemental jurisdiction over the Committee's request to confirm the arbitration award under state law. *See* 28 U.S.C. § 1367(c)(3).

[14]     The Committee also cited to two district courts that were willing to enforce loan agreements between training committees and union apprentices, *see Cedar Rapids Elec. Apprenticeship Training & Educ. Trust v. Roth*, No. 12-CV-2038, 2012 WL 5269188 (N.D. Iowa Oct. 24, 2012); *Nat'l Training Fund for Sheet Metal & Air Conditioning Indus. v. Maddux*, 751 F. Supp. 120 (S.D. Tex. 1990), but neither of them expressly addressed their own jurisdiction. Little significance can be given to "a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio." *See Goldman*, 834 F.3d at 251 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952)).